[Cite as *State v. Stickney*, 2023-Ohio-1914.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-20 |
| | : | |
| v. | : | Trial Court Case Nos. 2022 CR 082; |
| | : | 2022 CR 199 |
| ALLYSSA ANN STICKNEY | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 9, 2023

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Attorney for Appellee

COLIN P. COCHRAN, Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Appellant, Allyssa Ann Stickney, appeals from her judgment of conviction in in the Champaign County Court of Common Pleas after she pled guilty to multiple counts of endangering children and possession of drugs. Specifically, Stickney claims that the trial court erred by imposing consecutive prison sentences for her offenses. For the

reasons outlined below, we disagree with Stickney's claim and will affirm the judgments of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On May 2, 2022, a Champaign County grand jury returned an indictment in Champaign C.P. No. 2022 CR 082 charging Stickney with one second-degree-felony count of aggravated possession of drugs (Clonazolam) and three first-degree-misdemeanor counts of endangering children. Stickney pled not guilty to the indicted charges and was released on a personal recognizance bond. The conditions of Stickney's bond required her to be a law-abiding citizen; not to obtain, possess, or use illegal drugs; and to submit to court-supplied urine screens.

{¶ 3} On August 8, 2022, Stickney attended a final pretrial conference and submitted to a urine screen that showed she tested positive for cocaine. After testing positive for cocaine, Stickney admitted to violating her bond. The trial court thereafter found Stickney guilty of the admitted bond violation, continued her bond, and advised her that the bond violation would be considered at sentencing if she were convicted.

{¶ 4} At the same final pretrial conference, Stickney and the State advised the trial court that they had reached a plea agreement whereby Stickney would plead guilty to one count of endangering children and to an amended third-degree-felony count of aggravated possession of drugs. In exchange, the State agreed to dismiss the remaining charges against Stickney. The State also agreed to recommend that the trial court impose community control sanctions on the condition that Stickney's presentence

investigation ("PSI") did not reveal any additional criminal history that was unknown to the State and as along as Stickney did not violate her bond or get charged with any additional offense(s) before sentencing. After being advised of the plea agreement, the trial court conducted a plea colloquy and accepted Stickney's guilty plea to aggravated possession of drugs and endangering children. The trial court also ordered a PSI and scheduled a sentencing hearing, which was continued to September 23, 2022.

{¶ 5} Three days before Stickney's sentencing hearing, the State filed a notice of bond violation claiming that Stickney had tested positive for cannabinoid, amphetamines, and cocaine on August 31, 2022. The State alleged in the notice that the drug use in question was discovered after police officers responded to Stickney's residence on the report of a break-in. The State also alleged that the officers reported that when they had arrived at Stickney's residence, Stickney had been screaming and claiming that someone inside the walls of her residence was trying to molest her children; the police took Stickney to the hospital due to her altered mental state, and the medical records from that visit established that Stickney's urine had tested positive for the aforementioned drugs. In addition to filing a notice of bond violation for this incident, the State filed a bill of information in Champaign C.P. No. 2022 CR 199 charging Stickney with one fifth-degree-felony count of possession of cocaine and two first-degree-misdemeanor counts of endangering children.

{¶ 6} On September 23, 2022, Stickney appeared at court and admitted to the alleged bond violation. Thereafter, the trial court found Stickney guilty of the bond violation and once again advised her that the violation would be considered at sentencing.

The trial court also reminded the parties that the State was no longer bound to its recommendation of community control sanctions in Case No. 2022 CR 082.

{¶ 7} At the same hearing, Stickney waived her right to an indictment in Case No. 2022 CR 199 and pled guilty to all three counts set forth in the bill of information. In exchange for Stickney's guilty pleas, the State agreed to recommend that Stickney's sentence be served concurrently with the sentence imposed in Case No. 2022 CR 082. After Stickney entered her guilty plea in Case No. 2022 CR 199, the trial court sentenced her for both cases.

{¶ 8} For Case No. 2022 CR 082, the trial court imposed a 24-month prison term for aggravated possession of drugs and a concurrent six-month jail term for endangering children, for an aggregate term of 24 months in prison. For Case No. 2022 CR 199, the trial court imposed a 12-month prison term for possession of cocaine and concurrent six-month jail terms for each of the two endangering children counts, for an aggregate term of 12 months in prison. The trial court thereafter ordered that the 12-month prison term in Case No. 2022 CR 199 be served consecutively to the 24-month prison term in Case No. 2022 CR 082, for a total aggregate term of 36 months in prison.

{¶ 9} Stickney now appeals, challenging her 36-month prison sentence.

**Assignment of Error**

{¶ 10} Under her sole assignment of error, Stickney contends that the trial court erred by imposing consecutive prison sentences. Specifically, Stickney claims that the trial court's order for her to serve her 12-month prison term in Case No. 2022 CR 199 consecutively to her 24-month prison term in Case No. 2022 CR 082 was contrary to law

because the required consecutive-sentence findings made by the trial court under R.C. 2929.14(C)(4) were unsupported by the record.   We disagree.

{¶ 11} When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G).   *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7.   Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes (including R.C. 2929.14(C)(4), which concerns the imposition of consecutive sentences); or (2) the sentence is otherwise contrary to law.   *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 12} Under R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it finds that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

    (a)    The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

    (b)    At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no

single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)     The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 13} "[A] trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings."  *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.  Therefore, "[t]he first step in consecutive-sentence review is to ensure that the consecutive-sentence findings under R.C. 2929.14(C)(4) have been made[.]"  *State v. Gwynne*, Ohio Slip Opinion No. 2022-Ohio-4607, __ N.E.3d __, ¶ 25.  "If the trial court fails to make these findings, and that issue is properly raised on appeal, then [we] must hold that the order of consecutive sentences is contrary to law and either modify the sentence or vacate it and remand the case for resentencing."  *Id.*

{¶ 14} If the R.C. 2929.14(C)(4) consecutive-sentence findings have been made, we must then determine whether the record clearly and convincingly supports those findings.  *Id.* at ¶ 26.  Our review of the record and findings is de novo with the ultimate inquiry being whether we clearly and convincingly find that the evidence in the record does not support the consecutive-sentence findings that the trial court made.  *Id.* at ¶ 27.

"When reviewing the record under the clear-and-convincing standard, the first core requirement is that there be some evidentiary support in the record for the consecutive-sentence findings that the trial court made." *Id.* at ¶ 28. "If after reviewing the applicable aspects of the record and what, if any, evidence it contains, [we find] that there is no evidence in the record to support the consecutive sentence findings, then [we] must reverse the order of consecutive sentences." *Id.*

{¶ 15} "The second requirement is that whatever evidentiary basis there is, that it be adequate to fully support the trial court's consecutive-sentence findings." *Id.* at ¶ 29. Accordingly, this court must "focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings." *Id.* This court "may not, for example, presume that because the record contains some evidence relevant to and not inconsistent with the consecutive-sentence findings, that this evidence is enough to fully support the findings." *Id.* "R.C. 2953.08(G)(2) explicitly rejects this type of deference to a trial court's consecutive-sentence findings." *Id.* Instead, this court is "authorized to substitute its judgment for the trial court's judgment if [we have] a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings made by the trial court to impose consecutive sentences, which includes the number of consecutive terms and the aggregate sentence that results." *Id.*

{¶ 16} In this case, Stickney does not dispute that the trial court made all the required consecutive-sentence findings under R.C. 2929.14(C)(4) and incorporated those findings into the judgment entry. Stickney instead claims that the imposition of

consecutive sentences is contrary to law because two of the trial court's three consecutive-sentence findings were unsupported by the record. Specifically, Stickney takes issue with the trial court's finding: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; and (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Because there is no dispute that Stickney committed the offenses in Case No. 2022 CR 199 while she was awaiting sentencing in Case No. 2022 CR 082, Stickney does not challenge the trial court's third finding, i.e., that she committed one or more of the multiple offenses while she was awaiting trial or sentencing.

{¶ 17} We will first address the trial court's finding that consecutive sentences were not disproportionate to the seriousness of Stickney's conduct and the danger she posed to the public. The PSI established that Stickney's charges for aggravated possession of drugs and endangering children in Case No. 2022 CR 082 stemmed from the police being called to Stickney's residence on June 17, 2021, after Stickney's stepmother found Stickney sitting on her back porch unconscious. When an officer arrived at the scene, Stickney regained consciousness after the officer violently shook the chair in which she was sitting. After regaining consciousness, Stickney reported to the officer that she had consumed "a lot" of alcohol and took "a little" Xanax, for which she had no prescription. PSI, p. 3. The record also indicated that Stickney had access to a baggie of pills that contained 93 whole tablets and 10 partial tablets of Xanax, i.e., Clonazolam.

{¶ 18} The PSI established that, at the time of the June 17th incident, Stickney lived with her three children, who were only two years old, 16 months old, and eight weeks

old. The PSI also established that Stickney's neighbor reported taking Stickney's children to her apartment and calling Stickney's stepmother for help on the day in question because Stickney was trying leave her residence with the children and almost dropped the 8-week-old baby on the cement.

{¶ 19} After Stickney was indicted and placed on bond for the June 17th incident, Stickney tested positive for cocaine immediately prior to her pretrial conference on August 8, 2022, and admitted to violating her bond. Despite that infraction, the trial court continued Stickney's bond, which Stickney violated again on August 31, 2022. The August 31st bond violation stemmed from police discovering Stickney in a drug-induced state while responding to the report of a break-in at her residence. The police narrative indicated that when the officers arrived at Stickney's residence, they observed Stickney screaming and saying that someone was coming through her walls and ceilings and molesting her children. The officers also observed blood throughout Stickney's residence, on Stickney's hands, and on Stickney's children. When asked about the blood, Stickney advised the officers that it was her blood and she later advised medics that she had hurt her hand "stabbing the wall, where people were coming in." State's Exhibits 1 and 2. The record also indicated that Stickney refused treatment from the medics, became agitated, and continued screaming and seeing individuals who were not present; 19 pills were found on the floor in Stickney's residence, and the pills had marks on them as if they had been chewed.

{¶ 20} The officers reported that they transported Stickney to Urbana Mercy Hospital due to her altered mental state and that they later obtained a warrant for her

medical records there. The medical records indicated that on the day of the incident, Stickney's urine tested positive for cannabinoid, amphetamines, and cocaine. A few weeks after that incident, Stickney admitted to law enforcement that she had used cocaine on August 31st and claimed that the cocaine had contained a drug that she did not normally use, i.e., methamphetamine. Stickney was thereafter charged in Case No. 2022 CR 199 for possession of cocaine and endangering children.

{¶ 21} Based on the foregoing information, we cannot say that the trial court's finding that consecutive sentences were not disproportionate to the seriousness of Stickney's conduct and the danger she posed to the public was clearly and convincingly unsupported by the record. Stickney's conduct was severe because she continued to engage in the illegal use of drugs around her children even after she was indicted for that conduct and placed on bond. Stickney's conduct was also severe because her use of illegal drugs put her three young children at risk of physical harm on multiple occasions. In Case No. 2022 CR 082, Stickney almost dropped her 8-week-old baby and later lost consciousness while she was supposed to be caring for her children. In Case No. 2022 CR 199, Stickney became so hysterical that she dangerously wielded a knife around her children and left pills lying around for her children to access and possibly chew. Stickney's conduct was especially concerning because all of her children were at ages where they relied on her for everything.

{¶ 22} At the sentencing hearing, Stickney's stepmother reported that, as a result of the aforementioned incidents, Stickney's children have ongoing night terrors, scream about monsters, and become frightened when they are left in a room by themselves.

Therefore, Stickney's conduct was also severe because it had caused her children to suffer mental and emotional harm. For all the foregoing reasons, we find that the severity of Stickney's conduct and the danger she posed to the public, which included her children, was on par with the consecutive sentences imposed by the trial court.

{¶ 23} We now turn to the trial court's finding that consecutive service was necessary to protect the public from future crime or to punish Stickney. Upon review, we cannot say that this finding was clearly and convincingly unsupported by the record either; after initially being indicted for possessing drugs and endangering her children, Stickney engaged in the same type of conduct again and violated her bond twice due to drug use. This demonstrated a pattern of drug abuse that suggested the likelihood of future offenses from which the public needed protection.

{¶ 24} In addition, Stickney had a history of not taking her mental health and substance abuse treatment seriously. At the sentencing hearing, Stickney expressed a desire to follow through with her mental health and substance abuse treatment and reported that, *in the last two weeks*, she had obtained a psychiatrist, entered rehabilitation, and begun intensive outpatient treatment and group meetings. However, before those two weeks, Stickney had been deceptive with a treatment provider and had not been getting some of her medication refilled. Specifically, the PSI indicated that Stickney was not forthcoming about the extent of her drug use when she was first evaluated at TCN Behavioral Health. In addition, when Stickney pled guilty to the charges in Case No. 2022 CR 199, she advised the trial court that she was no longer taking Wellbutrin for her depression and anxiety because she had not gone back to the

doctor to get her prescription refilled. When the trial court asked Stickney why she did not go back to the doctor, Stickney responded "at the time it wasn't really important to me." Tr. (Sept. 7, 2022), p. 13.

**{¶ 25}** The PSI also indicated that Stickney had not completed the "Substance Use" chart in the PSI packet and had downplayed her history of substance use during her PSI examination. When the PSI examiner asked Stickney about her history of substance use, Stickney claimed that she had tried Xanax only once and denied using any other substances. The PSI examiner, however, reported that Stickney thereafter let it slip that she had also smoked marijuana when she was 13 years old. When the PSI examiner asked Stickney about her testing positive for cocaine on August 8, 2022, Stickney blamed her ex-boyfriend for the positive test result and declined to say anything further on the matter.

**{¶ 26}** The PSI also indicated that Stickney was not truthful during the PSI examination when she told the PSI examiner that she had never received any substance abuse treatment. Stickney's stepmother had advised officers that Stickney's drug problem "ha[d] been an ongoing battle" and that Stickney "ha[d] been through rehab 5 times." PSI, p. 4. Stickney's stepmother also advised officers that the last time Stickney had been in rehab "she just talked her way through it." *Id.*

**{¶ 27}** The facts that Stickney had not been forthcoming with the PSI examiner and the treatment provider at TCN about her drug use and that Stickney had violated her bond twice due to drug use suggested that Stickney did not take her substance abuse issues seriously and would likely reoffend. Although Stickney's decision to start mental

health and substance abuse treatment a few weeks before sentencing was a step in the right direction, it did not outweigh all the factors suggesting that she had a high likelihood of reoffending. Therefore, for all the foregoing reasons, we cannot say that the trial court's finding that consecutive service was necessary to protect the public from future crime or to punish Stickney was clearly and convincingly unsupported by the record.

{¶ 28} After reviewing the entire record de novo and weighing the quality and quantity of the evidence, we do not clearly and convincingly find that the evidence in the record did not support the consecutive-sentence findings at issue. Indeed, there was ample evidentiary support for the trial court to find that consecutive service was necessary to protect the public from future crime or to punish Stickney, and that consecutive sentences were not disproportionate to the seriousness of Stickney's conduct and to the danger she posed to the public. Accordingly, the trial court's decision to impose consecutive sentences was not contrary to law.

{¶ 29} Stickney's sole assignment of error is overruled.

## Conclusion

{¶ 30} Having overruled Stickney's assignment of error, the judgments of the trial court are affirmed.

. . . . . . . . . . . . .

TUCKER, J. and EPLEY, J., concur.